```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SERGEY KOMAROV and OLGA KOMAROVA,

                      Plaintiffs,         MEMORANDUM AND ORDER

         -against-                         Civil Action No.
                                           CV-05-3589 (DGT)
C.P.S SERVICES, INC. t/a DECORATING
SERVICES, JERRY D. CUMMINGS, ENTERPRISE
LEASING COMPANY and MATTHEW ROBERT
BACKERICK,

                      Defendants.
----------------------------------------X
Trager, J.:
```

Plaintiffs Sergey Komarov ("Komarov") and Olga Komarova ("Komarova;" collectively, "plaintiffs") brought this action in Supreme Court, Kings County, pursuant to New York Insurance Law § 5102(d) (McKinney's 2004). Plaintiffs were involved in a three-car accident with a vehicle owned by C.P.S. Services, Inc. ("CPS") and operated by Jerry D. Cummings ("Cummings") and a vehicle owned by Enterprise Leasing Company ("Enterprise") and operated by Matthew Robert Backerick ("Backerick;" collectively with CPS, Cummings and Enterprise, "defendants"). The case was removed to this court on July 29, 2005. Defendants move for summary judgment on the grounds that plaintiffs' injuries are not "serious," as required by § 5102(d).

**Background**

On Friday, January 7, 2005, between 5:00 and 6:00 p.m., Komarov was driving with his wife in the front passenger seat in her 1997 Chevy Astro across the Verrazano Bridge when they were rear-ended. Komarov was in the left lane approaching the toll plaza at approximately twenty to twenty-five miles per hour when he and his wife felt two heavy impacts from behind. The CPS vehicle driven by Cummings was directly behind plaintiffs' vehicle, and the Enterprise vehicle driven by Backerick was directly behind the CPS vehicle. Backerick rear-ended Cummings, who then ran into plaintiffs' vehicle. Reply Aff. of Paul Cohen in Supp. of Backerick Mot. for Summ. J. ("Cohen Reply Aff."), ¶ 29; Aff. of Frank Pintauro in Supp. of Cummings Mot. for Summ. J. ("Pintauro Aff."), Ex. E (police report stating "it appears that veh. #3 [Backerick's vehicle] following to[o] closely was cause of the accident.").[1]

Komarova was twenty-eight weeks pregnant at the time of the accident. Both plaintiffs were wearing seatbelts, and the airbags in the vehicle did not deploy. Komarov exited his

---

[1] Backerick also moves for summary judgment of no liability, arguing that he cannot have caused plaintiffs' injuries because his car did not make contact with theirs. This argument fails in light of his own admission that his car's contact with Cummings' car caused Cummings to make contact with plaintiffs' car, Cohen Reply Aff., ¶ 29, and in light of the police report opining that Backerick's following too closely was the cause of the chain-reaction accident that caused plaintiffs' injuries.

vehicle to check on the well-being of Cummings and Backerick.  A few minutes later, an ambulance arrived to take Komarova to the hospital.  Komarov followed the ambulance in his car.  At the hospital, Komarova's fetus was monitored and it was determined that the fetus had been unharmed by the accident.  Komarov did not seek treatment for any injuries to himself while at the hospital with his wife.  Komarova returned to her job the following Monday, where she remained until the day before her baby was born.  Komarov, a truck driver, did not return to work for two weeks.  It is not clear from the record when Komarov resumed driving a truck.

On January 12, 2005, five days after the accident, Komarov visited Dr. Randolph Rosarion, complaining of pain in his right wrist, neck and back.  Dr. Rosarion measured decreased range of motion for Komarov's cervical and lumbar spine and noted that he had a pre-existing ganglion cyst on his right wrist that had been aggravated by the accident.  Dr. Rosarion prescribed physical therapy and referred Komarov for further testing.  Over the following ten months, Komarov had x-rays and MRI's taken of his wrist, cervical spine and lumbar spine and participated in physical therapy three times per week.  He also had surgery to drain the cyst in his right wrist.  After receiving maximum benefit from physical therapy, Komarov had restored much of his range of motion, although he still had not achieved normal

3

levels. In addition, he continued to suffer from neck, back and wrist pain, for which he took over-the-counter pain medication.

In the days following the accident, Komarova complained of left knee pain, including edema, as well as neck and lower back pains, and headaches. On January 19, 2005, Komarova was examined by Dr. Rosarion at Elm Medical with regard to her injuries. Aff. of Paul Cohen in Supp. of Backerick Mot. for Summ. J. ("Cohen Aff."), Ex. D ("Komarova Dep.") at 24. Dr. Rosarion conducted cervical spine motion studies, which revealed a 38-60% limitation in her range of motion. Pls.' Opp'n, Ex. J ("Rosarion Report - Komarova") at 5. Dr. Rosarion also conducted tests on Komarova's left knee, a neurological examination, as well as sensory and reflex tests. Id. at 6-7.

Komarova attended twice-weekly physical therapy until she successfully delivered her baby on March 12, 2005. Komarova Dep. at 28. On April 27, 2005, Komarova underwent laparoscopic surgery[2] on her left knee and returned home the same day.[3]

---

[2] Although Komarova refers to her surgery as "laparoscopic," the various expert opinions in this case refer to it as "arthroscopic." The terms are used interchangeably in this opinion.

[3] The surgery was conducted at the Boulevard Surgery Center in Long Island City, New York under the care of Dr. Harshad Bhatt. Komarova Dep. at 34. Komarova commenced physical therapy twice a week on her knee two weeks after surgery, which lasted about three to four months. Id. at 35. Komarova received no other treatment on her left knee subsequent to the surgery and did not see a doctor. Id. at 37. At the time of the accident, Komarova was employed at the Department of Social Service, Human

4

Komarova Dep. at 33-37.

Plaintiffs complain that they both suffered serious injuries in the accident. The specific injuries they complain of will be addressed in detail below.

**Discussion**

Summary judgment is appropriate when there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)).

**(1)**

**New York's No-Fault Insurance Law**

In order to sustain a cause of action for negligence arising

---

Resource Administration. Id. at 41-42. She is not claiming any loss of earnings, and continued working immediately after the accident from January 10, 2005 until March 11, 2005, the day before she gave birth to her son. Id. at 46.

5

from a motor vehicle accident plaintiffs must prove they sustained either a basic economic loss in excess of $50,000 or a serious injury. N.Y. Insurance Law § 5102(d). Insurance Law § 5102(d) defines the term "serious injury" as:

> [1] a personal injury which results in death;
> [2] dismemberment;
> [3] significant disfigurement;
> [4] a fracture;
> [5] loss of a fetus;
> [6] permanent loss of use of a body organ, member, function or system;
> [7] permanent consequential limitation of use of a body organ or member;
> [8] significant limitation of use of a body function or system; or
> [9] a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

New York courts have long recognized that the "legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries." Toure v. Avis Rent A Car Systems, Inc., 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 746 N.Y.S.2d 865 (2002) (citing Dufel v. Green, 84 N.Y.2d 795, 798, 622 N.Y.S.2d 900, 647 N.E.2d 105 (1995)). As such, a plaintiff must provide objective proof of his injury in order to satisfy the statutory "serious injury" threshold; "subjective complaints alone are not enough." Id.; see also Gaddy v. Eyler, 79 N.Y.2d 955, 957-58, 591 N.E.2d 1176, 582 N.Y.S.2d 990 (1992)).

No "death, dismemberment, significant disfigurement, fracture, loss of fetus or permanent loss of use of body organ, member function or system" occurred as a result of this accident. Regarding a temporary impairment for ninety of the first one hundred eighty days following an accident, the Court of Appeals has held that "the words 'substantially all' should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment." Licari v. Elliot, 57 N.Y.2d 230, 236, 441 N.E.2d 1088, 455 N.Y.S.2d 570 (1982). The statutory ninety-day period of disability requirement must be construed literally, as the Court in Licari noted: "[T]he legislature has made it abundantly clear that a disability falling within the threshold period must be proved along with the other statutory requirements in order to establish a prima facie case of serious injury." Id. Here, Komarov returned to work two weeks after the accident, and Komarova took a maternity leave but was never instructed by a doctor to curtail her activities or miss work as a result of the accident. Cohen Aff., Ex. C ("Komarov Dep.") at 57-61; Komarova Dep. at 41-42. Plaintiffs thus fall short of the statutory ninety-day threshold.

Thus, the only statutory categories of "serious injury" which are in dispute concern whether both plaintiffs suffered a "permanent consequential limitation of use of a body organ or

member," or a "significant limitation of use of a body function or system."

On a motion for summary judgment for failure to meet the "serious injury," threshold of § 5102(d), the initial burden is on the defendant to establish a prima facie case that plaintiffs' injuries were not serious. See Gaddy v. Eyler, 79 N.Y.2d 955, 956, 591 N.E.2d 1176, 1177, 582 N.Y.S.2d 990, 991 (1992). Once the defendant has met the burden, the plaintiff must then, by competent proof, establish that such "serious injury" exists. Id.

**(2)**

**No-Fault Law: "Permanent Consequential" or "Significant Limitation"**

In order to establish a "serious injury" under either the "permanent consequential" or "significant limitation" categories, the plaintiff must set forth a limitation of use and some degree of permanence. Bugge v. Sweet, 90 A.D.2d 858, 858, 456 N.Y.S.2d 496 (3d Dep't 1982). Disc bulges alone do not constitute a "serious injury." Toure v. Avis, 98 N.Y.2d at 345, 774 N.E.2d at 1197, 746 N.Y.S.2d at 865. A plaintiff is required to provide objective evidence of "the extent or degree of physical limitation" by means of "an expert's designation of numeric percentage of a plaintiff's loss of range of motion. . . [or][a]n expert's qualitative assessment of a plaintiff's condition. . .

8

provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function and system." Id. at 350. When supported by objective evidence, an expert's qualitative assessment of the seriousness of plaintiff's injuries can be tested during cross-examination, challenged by another expert and weighed by the trier of fact. Id. at 351. By contrast, an expert's opinion unsupported by an objective basis may be wholly speculative, thereby frustrating the legislative intent of the No-Fault Law to eliminate statutorily insignificant injuries or frivolous claims. Id.

In the context of plaintiffs' claims, the term "consequential" means important or significant. Kordana v. Pomellito, 121 A.D.2d 783, 783, 503 N.Y.S.2d 198 (3d Dep't 1986). The term "significant" as it appears in the statute has been defined as "something more than a minor limitation of use." Licari v. Elliot, 57 N.Y.2d at 236, 441 N.E.2d at 1091, 455 N.Y.S.2d at 573. Further, New York courts have consistently held that a plaintiff's subjective claim of pain and limitation of motion must be sustained by verified objective medical findings. Grossman v. Wright, 268 A.D.2d 79, 84, 707 N.Y.S.2d 233 (2d Dep't 2000).

**(3)**

**Komarov's Injuries**

In support of their motions, defendants have submitted the affirmed report of Dr. Marshall Keilson, who performed a neurological examination with respect to Komarov's neck and back complaints and concluded that Komarov had "significant improvement and virtual resolution of all symptoms, including full range of motion of the neck and full flexibility of the back." Cohen Aff., Ex. F. ("Keilson Report") at 1. Specifically, Dr. Keilson found that there was a full range of motion of the neck: flexion at 45 degrees; extension at 55 degrees and lateral rotation to either side at 70 degrees. Id. at 4. Dr. Keilson found that Komarov is able to fully forward flex to 90 degrees and he is able to hyper-extend to 25 degrees and laterally flex to either side at 30 degrees. Id. Dr. Keilson's report also includes an evaluation of unsworn MRI reports.[4] Id.

---

[4] Defendants contend that these unsworn reports are inadmissible, rendering inadmissible the medical evidence presented by plaintiffs' expert, Dr. Rosarion, who read and considered the same MRI readings in his report. However, although all credible medical evidence must be in admissible form, where both parties rely on the same underlying reports, the reports may properly be considered by the court. Ayzen v. Melendez, 299 A.D.2d 381, 381, 749 N.Y.S.2d 445 (2d Dep't 2002) ("[W]hile the affirmation of the plaintiff's treating physician was based upon, inter alia, the results of unsworn magnetic resonance imaging reports of the plaintiff's cervical and lumbroscal spines and left shoulder, these results were referred to by the appellant's examining neurologist and, therefore, were

Defendants also submitted the affirmed report of Dr. Mark Wolprin, an orthopedist, who examined Komarov. Cohen Aff., Ex. E. ("Wolprin Report") at 1. Dr. Wolprin reported that there were no objective limitations to support Komarov's complaints of neck and back pain. Specifically, Dr. Wolprin indicated that Komarov can extend 10 degrees, flex 45 degrees, rotate 60 degrees and laterally bend 30 degrees. Wolprin Report at 1-2. Dr. Wolprin further indicated that Komarov can forward flex to 90 degrees and laterally bend to 30 degrees. Id. Dr. Wolprin concluded that Komarov had "no evidence of restriction of upper or lower extremity function." Id. at 2.

Dr. Wolprin also noted that Komarov is able to assist in housework activities, has no problem sitting or standing and can walk five to ten blocks. Wolprin Report at 2. Further, plaintiffs moved from a two-story walk-up apartment to a three-story walk-up apartment after the accident occurred. Komarov Dep. at 5-6.

Plaintiffs contend that defendants' motions should be denied because the reports of Drs. Wolprin and Keilson did not quantify

---

properly before the court."). Because the unsworn MRI reports were readily available and were in fact referenced by both parties in their experts' sworn affirmations, they may properly be considered on summary judgment. See Pommells v. Perez, 4 N.Y.3d 566, 577 n.5, 830 N.E.2d 278, 285 n.5, 797 N.Y.S.2d 380, 387 n.5 (2005) ("Though the MRI reports were unsworn, the various medical opinions relying on those MRI reports are sworn and thus competent evidence.").

11

the range of motion testing conducted and compare the degrees of range of motion measured to normal readings. Pls.' Opp'n at 3. Indeed, New York courts have strictly required that range of motion measurements be compared to a standard in order to be acceptable evidence of a limitation or lack thereof. See, e.g., Borelli v. Ogno, 36 A.D.3d 639, 639, 826 N.Y.S.2d 585 (2d Dep't 2007) (holding that defendants failed to make a prima facie case where their orthopedist did not compare his range of motion findings to normal values, "thereby leaving the court to speculate as to the meaning of those figures"); Aronov v. Leybovich, 3 A.D.3d 511, 511, 770 N.Y.S.2d 741 (2d Dep't 2004) (same); Mosheyev v. Pilesky, 3 A.D.3d 523, 771 N.Y.S.2d 150 (2d Dep't 2004) (same). For this reason alone, defendants' motion is denied.

However, even if defendants had succeeded in making a prima facie case of no serious injury, plaintiffs' medical evidence in the form of a January 16, 2008 report from Dr. Rosarion is sufficient to raise a triable issue of fact as to whether Komarov's injuries meet the statutory threshold. Dr. Rosarion's report included range of motion testing for the cervical and lumbar spine performed on December 12, 2007, which, once again, revealed lower than normal results. Pls' Opp'n, Ex. F ("Rosarion Report") at 3. Specifically, Dr. Rosarion measured the following ranges of motion:

12

|                      | Normal | Tested |
|----------------------|--------|--------|
| Cervical             |        |        |
| Flexion              | 60     | 40     |
| Extension            | 75     | 50     |
| Left Rotation        | 80     | 65     |
| Right Rotation       | 80     | 70     |
| Left Lateral Flexion | 45     | 30     |
| Right Lateral Flexion| 45     | 30     |
|                      |        |        |
| Lumbar               |        |        |
| Flexion              | 60     | 40     |
| Extension            | 30     | 20     |
| Left Rotation        | 30     | 20     |
| Right Rotation       | 30     | 15     |
| Left Lateral Flexion | 25     | 15     |
| Right Lateral Flexion| 25     | 10     |

Id.

The Rosarion Report notes that Komarov sustained neck and back injuries in a prior accident on August 15, 2002. Id. at 2. Komarov complained of neck and back pain, as well as left wrist pain after that accident, but stated that "his complaints were essentially resolved and that he was completely asymptomatic." Id.

Dr. Rosarion concluded that, "based upon a review of the above-referenced records and my personal examination, the patient suffers from the following as a result of this accident: (1) cervical myofascitis with disc bulge at C5-C6 where disc material approximates the ventral thecal sac and anterior disc herniation at C6-C7 where the disc material is encroaching on the anterior soft tissues; (2) cervical spine derangement; (3) lumbar myofascitiis with disc herniation at L5-S1 and bulging disc at L4-L5; (4) lumbar spine derangement." Rosarion Report at 4. Dr.

13

Rosarion further concluded, based on the subjective complaints of the patient and the objective testing he conducted, that "these injuries are chronic in nature and it can be determined with a fair degree of medical certainty that these injuries are permanent in nature."  Id.  Dr. Rosarion also stated that Komarov will have trouble performing his daily activities "in a pain-free environment."  Id.

Defendants CPS and Cummings argue that the gap in time between Komarov's last treatment with Dr. Rosarion and the examination discussed in the Rosarion Report undermines the credibility of Komarov's claims of serious injury.  However, Dr. Rosarion stated that Komarov's course of treatment ended when it was determined that a "maximum medical benefit" had been derived from physical therapy.  Rosarion Report at 2.  Dr. Rosarion further stated that no complete cure or rehabilitation was likely and that further physical therapy would be futile.  Id.  "[W]hile cessation of treatment is not dispositive the law surely does not require a record of needless treatment in order to survive summary judgment.  A plaintiff who terminates therapeutic measures following the accident, while claiming serious injury, must offer some reasonable explanation for having done so."  Pommells v. Perez, 4 N.Y.3d 566, 574, 830 N.E.2d 278, 283, 797 N.Y.S.2d 380, 385 (2005).  Thus, the gap in time does not weaken Dr. Rosarion's conclusions as to the extent of Komarov's

injuries.

Komarov also argues that his ability to engage in normal activities has been impaired due to the injuries he suffered in the accident. Dr. Rosarion reported that Komarov complained of a wide variety of limitations to his daily activities, including general household duties, lifting items in excess of twenty five pounds, stair climbing, standing or sitting in a single position for more than twenty five minutes at a time, walking distances of more than two to three blocks, and an inability to sleep comfortably at night. Rosarion Report at 3.

Komarov's reduced range of motion in both his cervical and lumbar spine is sufficient to meet the "serious injury" threshold at the summary judgment stage. See Hodder v. United States, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) ("While there is no set percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes.") (collecting New York cases); Rand v. Volvo Fin. N.A., No. 04-cv-0349, 2007 WL 1351751, at *12 (E.D.N.Y. May 8, 2007). Komarov has, therefore, raised sufficient evidence of a serious injury to survive summary judgment.

**(4)**

**Komarova's Injuries**

In support of their motions, defendants submitted the affirmed report of Dr. Keilson, who conducted a neurological evaluation of Komarova on October 12, 2006. Cohen Aff., Ex. I ("Komarova Keilson report"). Komarova told Dr. Keilson that she has occasional discomfort in the left knee and that it does not "feel right;" that her neck symptoms were improved but "not perfect;" and that she occasionally takes over the counter pain medications for pain n her lower back. Id. at 1-2. Dr. Keilson examined Komarova and found "a full range of motion of the neck including flexion to 45 degrees, extension to 55 degrees, and rotation to each side of 70 degrees." Id. at 4. He further found as to her lumbosacral spine that "[s]he is able to forward flex at 90 degrees, extend 25 degrees and lateral flex to either side to 30 degrees." Id. He concluded that "there are no objective signs on the neurological examination to correlate with her subjective symptomatology. There is no neurologically related disability at the present time and no indication for further neurological treatment." Id.

Dr. Wolprin examined Komarova on October 23, 2006, and found that she could extend her neck to 10 degrees and flex her neck to 40 degrees. Cohen Aff., Ex. H ("Wolprin Aff. - Komarova") at 2. Lateral bending of the neck was 45 degrees bilaterally and

16

rotation was 60 degrees bilaterally.  Id.  Examination of the back revealed normal symmetry of the shoulders and pelvis, and she was able to forward flex to 90 degrees and laterally bend to 30 degrees bilaterally.  Id.  Dr. Wolprin found that Komarova "demonstrated no evidence of active restriction of neck, lower back, upper or lower extremity motion."  Id.  He concluded that "[t]here is no evidence of clinical limitations at the present time.  Her complaints relative to the knee are subjective in nature."  Id.  However, as with their examinations of Komarov, both Dr. Wolprin and Dr. Keilson failed to compare Komarova's range of motion to normal ranges.

With regard to the post-arthroscopic left knee, Dr. Wolprin concluded that there is no evidence of clinical limitations at the present time, and her "complaints relative to the knee are subjective in character."  Wolprin Aff. - Komarova at 2.  Thus, at least as to Komarova's knee, defendants have made a prima facie case that she did not suffer a "serious injury" under § 5102(d).

In response, Komarova presented an affirmed medical report from Dr. Rosarion detailing his examination of her on December 5, 2007.  Rosarion Report - Komarova.  Komarova reported to Dr. Rosarion that she continued to experience limitations in her daily activities, including "general household duties, lifting items in excess of 15 lbs, stair climbing, standing or sitting in

a single position for more than 15 minutes at a time, walking distances of more than 1-2 blocks, inability to sleep comfortably and pain in the affected areas." Id. at 2. Dr. Rosarion's report contained an updated range of motion testing for the cervical spine:

|  | Normal | Tested |
|---|---|---|
| Flexion | 60° | 50° |
| Extension | 75° | 60° |
| L. Rotation | 80° | 70° |
| R. Rotation | 80° | 70° |
| L. Lateral Flexion | 45° | 40° |
| R. Lateral Flexion | 45° | 40° |

Id. at 2. Dr. Rosarion also examined Komarova's left knee, finding soft tissue swelling and negative ligamental laxity. Id. at 3. Dr. Rosarion concluded that Komarova has suffered the following injuries as a result of the accident: "(1) cervical myofascitiis with disc bulge at C5-C6 as well as anterior protrusion at C5-C6 where disc material is encroaching on the anterior soft tissues; (2) cervical derangement; and (3) left knee derangement with partial to complete tear of the medial meniscus with intra-articular joint fluid, status post arthroscopic repair." Id.

Only one of Komarova's range of motion limitations (extension) reaches the threshold of twenty percent, but that limitation coupled with evidence of a disc bulge is - just barely - sufficient to raise a fact issue as to whether she suffered a serious injury. See Toure v. Avis Rent a Car Sys., Inc., 98

18

N.Y.2d 345, 353, 774 N.E.2d 1197, 1201-02, 746 N.Y.S.2d 865, 869-70 (2002) (holding that a disc bulge, two herniated discs and an unquantified loss of range of motion were sufficient evidence of a serious injury to survive summary judgment); Pfeiffer v. Mavretic, No. 04-cv-155, 2007 WL 2891433, at *8 (W.D.N.Y. Sept. 28, 2007) ("Although the issue is close, . . . I find that the medical records submitted by plaintiff establishing a C5-6 disk herniation . . ., accompanied by a quantifiable and objectively supported restriction in movement lasting for at least a month, are sufficient to create a genuine issue of fact as to significant limitation of use."). Accordingly, although it is a close question, Komarova has successfully rebutted defendants' prima facie case of no serious injury.

## Conclusion

For the above-mentioned reasons, defendants' motions for summary judgment are denied.

Dated:    Brooklyn, New York
         September 16, 2008


                                SO ORDERED:


                                _____/s/_____
                                David G. Trager
                                United States District Court Judge